Good morning, Your Honor. Counsel? My name is Tom Johnston. The issue in this case is home savings tax basis and intangible rights received from FISLIC. The principal way a taxpayer gets basis in an asset is to pay for the asset. It's called cost basis. Did home incur a cost? Yes, it did. Absolutely it did to obtain the rights. The acquired thrifts were insolvent by a large amount. They were worth less than zero. They were an obligation pending that FISLIC would have to take over, but FISLIC didn't have enough funds, enough cash in its fund to take over all of the Part of the cost that home incurred to do the transaction was a cost of the rights in issue. It's really economic reality. It can't be disputed. Here, the federal insurer remained at risk. Isn't that right? It was reducing its risk by transferring all these savings and loans that were in trouble, but at the end of the day, it was still the insurer. It remained insurer. As if your house burned down, State Farm still insures you. That's why I've been trying to decide how could the district court have been wrong in this. It's complicated, and that's what you have to persuade us. Yes, well, okay. On the cost basis issue, the district court made, I think, two determinations. One was that there was a double counting. There was no double counting here. The home assumed roughly $850 million of liabilities. It received thrift assets that were worth roughly $600 million. The only cost, the only asset that could account for the remaining $250 million was the rights. There were a few other incidental things, but it was the rights. The court was also wrong when it said that home didn't bargain for cost basis. One doesn't bargain for basis. It's not something that parties convey. It's something that flows from the operation of the code. Old parties often bargain, and they allocate this to that, and that to something else. They bargain for basis. Well, your Honor, they bargain for the elements. Indeed, doing a reorganization is a way of bargaining for basis. They bargain for the elements that support the basis. For example, in this case, they needed FISLIC. In order to take over the thrift, they needed FISLIC to declare them insolvent and therefore failed. That was also an element that they needed to get G reorganization treatment. Well, maybe they just got something with a fair market value from FISLIC separately. Like maybe you put in FISLIC says, we'll give you $100 million if you'll do this. They wouldn't necessarily be bargaining for basis then in that sense. They got an asset from maybe they got an asset from FISLIC. Absolutely right. That's absolutely right that you can bargain for the elements of basis. We believe that cost basis is what fits this transaction. But if we take apart the transactions, and we view there is a merger on one side, which seems to be what the court below and the government in its briefs has been arguing. It pays lip service to an overall transaction, but then it looks at the merger, and it doesn't affirmatively, neither the court below nor the government, affirmatively say how should we have treated. What should the basis have been in these rights? There clearly were rights. What was the basis? Nobody addresses that on the government side. Counsel, I'm curious as to how the whole transaction was put together. Did home approach FISLIC? Did FISLIC go to home and say we've got some troubled savings and loans? What would you think about acquiring them? How was all of this arranged? Home made FISLIC aware that it was interested in branching into Florida. But FISLIC had also made the general population aware that it was considering essentially selling branching rights, and it encouraged people to come forward. As a way of encouraging people to take over failing savings and loan and reducing FISLIC's liability. Yes, so it kind of happened concurrently. The idea came up first at FISLIC, but in this individual transaction home. So was the question of the branching rights negotiated with FISLIC or was it negotiated with the Federal Home Loan Bank Board? FISLIC. So it was negotiated with FISLIC. The bank board simply had to approve the transaction. Yes, the bank board had no contracting authority. All the contracting authority was in FISLIC, and FISLIC negotiated the head of FISLIC was Brent Beasley. And the regulatory rights that you claim are part of the cost basis here were negotiated with FISLIC contemporaneous with the agreement to purchase the savings and loan in Florida, Missouri. Absolutely. It was all part of the assistance agreement. The assistance agreement was really the head of agreement. It was the center. Is there a separate contract between home and the savings and loans? No, there's just the assistance agreement. It is the principal contract. It is the principal contract. There are different facets. The assistance agreement references the merger agreement, although the merger agreement was negotiated between FISLIC and home. The assistance agreement also references, on the other side, the resolutions that contained the rights in issue. And does the assistance agreement provide for the regulatory rights, the branching rights? It references two resolutions, and those are the resolutions that provide the rights, yes. And the resolutions are by the bank board or by FISLIC? By the bank board. Okay, because FISLIC did not have the right to give away the branching rights. Is that correct? FISLIC had no right at that time to give away bank rights. A couple years or a year later, they did. But at that point, they didn't. They were the ones who contracted the rights away. But if we were to divide, as the government looks at it, if we were to divide this into two transactions, forget about economic reality, that we had a merger on one side and the rights coming as just a contribution, that they were an inducement, but they weren't part of the transaction, which seems to be, they still had basis. They had fair market value basis, because if somebody gives you cash, for example, or property, you have income and you have basis in that income. The code section that would be relevant in that case would be 597, because HOME didn't report any income. Why didn't it report any income? Well, first of all, it didn't believe that it had the inducement without paying something for it. But also, 597 says you don't have to report that income. And 597 says something else. It says, and the unreported income does not reduce your basis. It would precisely cover this transaction. What happened in the court below? The court below said the words money or any property. That's what is conveyed. Money, any amount of money or any property did not include these rights. It said so, probably because all of you seem to be talking about, I think all of you were talking, saying, well, the question is financial. And frankly, I haven't got a handle on what you all meant by financial, because to me, everything in the world almost is financial. Well, maybe not love and things like that. Precisely, your Honor. Lots of things are financial, but you all seem to say, well, no, it's got to be financial. We don't say it has to be financial. You say it now. I don't even know what the limitation of financial is. The rights were not monetary. They weren't money. They weren't a money equivalent. Property is not monetary. Property is not monetary. We believe these were financial considerations in the sense that they got the deal done. They were what balanced the balance sheet. They were. Would you have had the right, if you had sold off some part of your operation after the merger, would you have had the right to convey the regulatory rights with it? We had no right to convey the rights. Only at this time, only the Board could convey those rights. So if it can't be conveyed, does that affect the notion of what was basis or what was property to you? I understand that it had value to you, but if it couldn't be transferred to anybody else. No, there are various instances under the Code that licenses other types of property rights, even though they can't be conveyed. That affects their value clearly, but they still have value when they are an asset or property for purposes of the Code. I'd like to reserve the remainder of my time if I could, but I wouldn't answer any questions now. May it please the Court. Arthur Catterall on behalf of the government. I'd like to address a point that Mr. Johnson alluded to and is also in the reply brief. On page three of the reply brief, the taxpayers say that the government apparently concludes that the broader home FISLIC transaction in which home received the rights in exchange for agreeing to undertake the merger should simply be ignored for tax purposes, leaving home with no basis in the rights. Well, let me make explicit what was implicit in our entering brief, and that is this grant of rights was in the nature of a non-shareholder contribution to capital. And under Section 362C1 of the Code, property that is received as a contribution to capital from a non-shareholder takes a zero basis. So there's where you get your zero basis. Now, in their opening brief, the taxpayers suggest that 362C1. And can you explain that? You're using some big terms there. Yeah, Section 118. More than three syllables, a little hard for the Court to follow. Section 118 deals with contributions to capital. And normally, of course, a contribution to capital comes from a shareholder. But there are situations, and it's often when you have this type of sort of what the taxpayers refer to as a public-private transaction where you get a non-shareholder contribution to capital. A good example is, you know, local government will give Microsoft incentives to build a factory in their town, things of that nature. Now, again, in their opening brief, the taxpayers say that this can't be a non-shareholder contribution to capital. They give a couple of reasons. First, they point to the Chicago-Burlington case, which adopts some factors that you look at. One of the things the Supreme Court said in Chicago-Burlington is that a non-shareholder contribution to capital cannot be compensation. And so the taxpayers say, well, we receive these rights as compensation to perform a service for the government. Well, the Court in Chicago-Burlington made clear what they meant by compensation, and that is they're talking about payments for specific, quantifiable services performed by the recipient for the government as a customer. And it cannot seriously be argued that Holmes' purchase of these S&Ls were services performed for the government as a customer. Well, let me tell you what troubles me about the government's argument. If you try to categorize it in that way, I think the government is probably quite correct, that FISLIC was not a customer of Holmes in any usual sense of that. This is a very unusual transaction because it was in FISLIC's financial interest and in the interest of the United States as a whole as a budgetary matter to reduce its liabilities during the failed S&L period. And so what it's doing is encouraging Holmes to take something that otherwise makes absolutely no sense. And in fact, somebody would have been all over Holmes. Some shareholder derivative suit or somebody would have brought something in a hurry against anybody at home who would have suggested this kind of a transaction. It makes no sense whatsoever unless there is something else at issue here. And the something else, as I understand it, are those regulatory rights. And that's what made this worthwhile to Holmes. Now, given that we can put some kind of value on that, the question is can we also account for it in some tax way? Well, you account for it as a non-shareholder contribution to capital. I mean, that gets to my second point. The other argument they make for why this can't be a contribution to capital is that, they point out, that the rights were enforceable contract rights furnished for consideration. Well, Chicago Burlington specifically states that a non-shareholder contribution to capital must be bargained for. So, yes, it had value, but all non-shareholder contributions to capital have value. It's an inducement to undertake something that provides indirect benefits for the public as a whole. So that's what we believe the proper characterization should be. Now, let me get to some of the affirmative contentions. The cost basis theory that the taxpayers raise, essentially they want a single assumption of liabilities to give the same amount of basis twice. They're saying, okay, we obtained a cost basis in the rights by assuming liabilities in excess of value, and we also obtained this high favorable carryover basis in the S&L's assets by assuming liabilities in excess of value, because they could not have gotten that favorable carryover basis unless they assumed all the liabilities. So they're using, again, a single assumption of liabilities to get the same amount of basis twice, and we submit that that's not proper. And a second point to make here, even if this were possible, even if a liability assumed in a tax-free reorganization could be the source of a cost basis in rights provided by the government as an inducement, even if that were possible, they didn't document this as a purchase and sale of rights. They very easily could have drawn up a purchase and sale agreement. The government says we're selling you these regulatory rights for $200 million, and HOME will be deemed to have satisfied this purchase price by assuming these liabilities in excess of the value of the S&L assets. Now, you know, whether that would work, I don't know, but they certainly could have documented it that way, but they didn't. And they can't now come back and disregard the form of their transaction. That's the Supreme Court case called Commissioner v. National Alfalfa, I believe, is the- How about the fair market value concept? The fair market value concept, okay, dealing with Section 597- I realize everybody talked about financial, and that doesn't seem to do much for me, but anyway, go on. Yeah, let me- What does it mean, I guess? Hopefully I can persuade you here. What I'd like to focus on is the reference in Section 597-A to money or other property received from FISLIC pursuant to 12 U.S.C. 1729-F. Right. So- So let's get away from money for a second. Okay, well, what I'm saying, you know, even if you assume that these rights were received from FISLIC, which we deny, and you assume that they were received pursuant to 12 U.S.C. 1729-F, which we also deny, the question is, okay, do the rights fall under Section 597-A? Right. We've demonstrated that the legislative history makes crystal clear that the type of assistance, 597-A- Right, and- Many of those are very crystal in this right- You say, what does financial mean? You go to 12 U.S.C. 1729-F, which talks about FISLIC can make cash infusions. They can give guarantees, indemnities. If you believe it can do this also, though, then there we are. It can do all kinds of things. Okay, but I'm- It can do all kinds of goodies. There is a difference between cash or cash-like assistance versus non-financial assistance. If I gave you a piece of land, would that be financial? No, that's not- That's not financial? No. Okay. So property, so the word property is just surpluses. Yes. Is that correct? Well, the taxpayers point to the plain meaning, and they say, you know, money or other property. Well, that's certainly broad enough. Well, and they cite a Supreme Court case saying that you have to take the language- you have to interpret the language in its context. The context here is 597B, which provides an anti-basis reduction rule that clearly applies to cash or cash-like assistance. That is 362- What's cash-like? Indemnities, guarantees, things, you know, notes, things of that nature. Notes or cash-like? How about stock? I would not call stock cash-like. But if you look at 362C1-I'm sorry, I'm sorry, 362C2, that is the basis reduction rule that 597B is aimed at. And so the question, you know, and that's aimed at cash. So the question is, why would Congress have this favorable basis rule in 597B just for financial assistance, if, you know, if they intended 597A to be much broader? So we submit that that alone renders the plain meaning rule inapplicable, at the very least renders the language ambiguous of 597A. You go to legislative history, and the legislative history makes clear that it's financial assistance that the statute is aimed at. Let me ask a question. Have you tried to settle this case? Would you like to go to mediation? We have a very fine mediation service. I did not handle the case below. You could ask Mr. Johnston. I don't know what happened below if there were settlement negotiations. We did not, and I'm trying to remember if we even had a mediation conference, but there was basically nothing at the appellate level. Would you like to respond to that also? We did have some negotiations at one time. They did not go very well. And we did not participate. Are you interested in our referring you to mediation? We have a fine service. In the tax world, cases go to what's known as appeals, not an appeal court, but appeals and try to get resolved. This was actually a coordinated issue for the IRS so that any settlement had to get reviewed and there were firm terms, and we didn't get very far. That doesn't quite answer my question, but you don't want to go to mediation? Not at this point in time, no. Okay. Thank you. Mr. Johnston, I'm not sure you have much time. I will allow you a minute to respond. Okay. I'll try to be brief. The Congress was not unaware of what was happening in the late 70s and early 80s. They enacted two specific provisions to act as incentives so that FSLIC could get more, could leverage its ability. One was 368A1G. That was the reorganization section in issue. And the assumption of liabilities, the amount of liabilities assumed, is not relevant in a carryover basis. It was relevant only for the cost basis of the rights that were required outside the merger. The rights didn't come from the merged thrifts. That was 368A1G, as we said in the brief. It was a clear incentive. The second incentive was 597. Mr. Catterall is absolutely right, although they didn't argue it in their briefs. One of the issues that Congress was addressing in 597 is, what do you do with a non-shareholder contribution? What do you do with anything that comes? We don't want the savings and loan acquirer having to pay income tax on the assistance. And we don't want them taking a zero basis because that will have tax implications down the road. And so they enacted 597, and 597 clearly says that the assistance is an income and you don't have to reduce basis by the amount of the unreported income. They're clearly incentives. Congress was cooperating with FISLIC and with the board to get the job done without spending more money than they had. Thank you, counsel. We thank both counsel for arguments in a very complicated case.
judges: Fletcher B. , Fernandez, Bybee